PEOPLE v O'SHEA

Docket No. 79215. Submitted November 5, 1985, at Detroit.—Decided
February 18, 1986.

Defendant, Michael K. O'Shea, was convicted of larceny by con-
version by a jury in Wayne Circuit Court. The circuit court,
Patrick J. Duggan, J., sentenced defendant to three years
probation, with the first and last three months to be served in
the Detroit House of Correction, and ordered defendant to
make restitution to the victim of $125. Defendant appealed
raising several issues. *Held:*

1. The circuit court did not err by denying defendant's
motions to quash the information or motion for a directed
verdict of acquittal. There was a sufficient factual basis to send
the case to the jury and for the jury to find defendant guilty of
larceny by conversion. The evidence showed that the victim
and defendant executed a written contract which provided for
the sale of upholstery fabric by defendant's employer, the
Village Paper Station; that the defendant accepted and depos-
ited a check in the amount of $125, given to him by the victim
as down payment, into a credit union account which was
subsequently closed; and that the victim never received the
fabric from defendant or his employer.

2. Defendant's counsel did not object to the jury instruction
which defendant now claims was erroneous; *i.e.,* if the jury
finds that custody of the money was given to defendant for
some limited or special purpose and the owner intended that
the money not be held or used for any purpose other than that
for which it was given, then any taking outside of that purpose
may be considered as being without consent. Therefore, absent
manifest injustice, appellate review was precluded. Moreover,

REFERENCES

Am Jur 2d, Appeal and Error § 891.
Am Jur 2d, Larceny § 39.
Am Jur 2d, Prosecuting Attorneys § 24.
See the annotations in the ALR3d/4th Quick Index under District
and Prosecuting Attorneys; Trover and Conversion.

the circuit court properly instructed the jury on the elements of larceny by conversion, given the facts in this case.

3. The prosecuting attorney's office did not abuse its discretion by charging defendant with larceny by conversion.

Affirmed.

1. LARCENY — LARCENY BY CONVERSION.

A defendant, to whom custody of property is given for some limited or special purpose by an owner, who intended that the property not be held or used for any purpose other than for which it was given, who uses the property outside the owner's intended purpose may properly be found by a trier of fact to have taken the property without the owner's consent, satisfying a necessary element of larceny by conversion (MCL 750.362; MSA 28.594, CJI 23:6:01[a]).

2. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Absent manifest injustice, the Court of Appeals will not review a claim of error that a trial court failed to give a jury instruction or gave an improper instruction without a proper objection at trial.

3. PROSECUTING ATTORNEYS — CHARGING FUNCTION.

The duty to prosecute rests in the prosecutor's sound discretion; the prosecutor has broad discretion in determining whether to prosecute and what charges to file against a defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Mark E. Weiss,* for defendant on appeal.

Before: SHEPHERD, P.J., and J. H. GILLIS and P. J. CLULO,\* JJ.

P. J. CLULO, J. Defendant was convicted by a jury in Wayne County Circuit Court on a charge of larceny by conversion, MCL 750.362; MSA 28.594. On appeal as of right, defendant raises the follow-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

ing three issues: 1) whether the trial court erred as a matter of law in refusing to quash defendant's bindover and in denying his motion for a directed verdict; 2) whether the trial court properly instructed the jury on the elements of larceny by conversion; and 3) whether the prosecutor's office properly exercised its discretion in charging the defendant with this crime. We affirm.

During August, 1983, Sharon Gardner went to the Village Paper Station in Plymouth, Michigan, a number of times to look at and ultimately select upholstering fabric for reupholstering a pair of chairs. Defendant, an employee of the Village Paper Station, assisted Mrs. Gardner in making the selection and also went to her home to measure the chairs. At that time, Mrs. Gardner and defendant executed a written contract and defendant accepted a down payment in the form of a check for $125 made payable to the Village Paper Station. About one week later, defendant informed Mrs. Gardner that the material was on back order and that it would not be available for four weeks. At the end of the month, Mrs. Gardner called the Village Paper Station to check on the status of the material. Defendant told her that he would contact the fabric manufacturer and call her back. He failed to return the call. A week later she again contacted the store. She talked with a woman, who indicated that she could get a refund but that she would have to wait a week. When Mrs. Gardner informed her husband, an attorney, of these events, he began his own inquiry into the matter.

During November, 1983, Mr. Gardner contacted defendant by phone on more than one occasion requesting the refund of his wife's down payment. Failing to receive it, Mr. Gardner drove to the business only to discover defendant was not there.

Failing to receive a response from defendant to his written message asking defendant to contact him, Mr. Gardner began his own investigation into the legal status of the Village Paper Station. This was prompted after a review of the check made payable to Village Paper Station revealed that it had been endorsed by Village Paper Station, Ltd., and stamped with the designation VPS Upholstery. His investigation revealed a confusing array of facts regarding the organization and ownership of this business. Two different assumed-name certificates were on file naming either Village Paper Station or VPS Upholstering Co. Also discovered were Articles of Incorporation for Village Paper Station, Ltd., naming Audrey O'Shea, defendant's mother, as the incorporator and resident agent. Audrey O'Shea was found to be the sole owner of Village Paper Station, Ltd., of which VPS Upholstering Co., was a division.

On December 1, 1983, Mr. Gardner went to the store. He approached defendant and asked if he was Michael O'Shea. Defendant denied that he was Michael O'Shea. The next day Mr. and Mrs. Gardner went to the store where they confronted defendant. He denied ever having seen Mrs. Gardner and also denied the entire transaction. On December 5, 1983, Mr. Gardner contacted the Wayne County Prosecutor regarding criminal action against defendant. At the preliminary examination in this matter on February 6, 1984, defense counsel unsuccessfully moved to quash the information based on the ground that the prosecution had failed to establish intent. Defendant was bound over for trial on the charge of larceny by conversion. On April 20, 1984, defense counsel again unsuccessfully renewed his motion to quash.

At trial, Lieutenant Robert Commire of the Plymouth Police Department testified that he was

the officer in charge of this case and that he took the complaint from Mr. Gardner in December, 1983. On cross-examination, he testified that Mrs. Gardner's check was deposited in the Village Paper Station account at the Community Federal Credit Union in Plymouth, Michigan. His investigation into the status of this account in October, 1983, revealed that it had been closed. The credit union's videotapes showed that defendant was the person who made the deposits. At the close of the prosecutor's case, defense counsel moved for a directed verdict of acquittal, arguing that the prosecution had failed to make a prima facie case. After hearing argument, the court denied the motion.

Defense counsel presented one witness, Audrey O'Shea, who is defendant's mother. Her testimony revealed that defendant was a salesman for the corporation and that he owned no shares in it nor was he an officer. On the date of trial, the business maintained one checkbook. However, on September 7, 1983, it had maintained two such checkbooks. The credit union application for these checkbooks showed that only Audrey O'Shea had authority to sign checks. Mrs. Gardner's check had been deposited in the Village Paper Station, Ltd., —VPS Upholstering account.

In the first issue, defendant contends that when Mrs. Gardner gave him the check, she intended to transfer both title and possession of the funds and that, since both title and possession had passed to defendant, there can be no conversion. Therefore, the trial court should have quashed defendant's bindover and granted his motion for a directed verdict of acquittal. We find that the trial court did not err as a matter of law in either situation and that there was a sufficient factual basis to sustain its findings.

MCL 750.362; MSA 28.594 provides in relevant part:

"Any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny * * *"

In support of his conclusion that there was no conversion in the case at bar, defendant cites *People v Christenson,* 412 Mich 81; 312 NW2d 618 (1981), and *People v Bayer,* 352 Mich 564; 90 NW2d 656 (1958). In support of the people's argument that there was sufficient evidence to allow the jury to find the defendant guilty of larceny by conversion, they cite *People v Franz,* 321 Mich 379; 32 NW2d 533 (1948). These cases are distinguishable on their facts and, when viewed in light of the facts of the case at bar, *Franz* controls.

In *Franz, supra,* there was an oral contract whereby the defendant agreed to purchase iron for the complainant who had given to the defendant the sum of $4,080. No delivery of iron was made and the defendant was convicted of larceny by conversion. The defendant argued that it was impossible to be guilty of conversion of his own property and that as soon as he received the money from the complainant, it became his property. The *Franz* Court rejected that argument and stated:

"The quoted statute under which defendant was prosecuted cannot be rendered impotent by so narrow a construction. By the testimony the issue was presented whether at any time, as charged in the information, defendant, instead of buying the iron for delivery to

Wallace with the money paid him to defendant, the later did fraudulently convert it to his own use." 321 Mich 385-386.

This is precisely the argument being advanced by defendant in the present case and we reject it just as the *Franz* Court did. *Bayer* and *Christenson,* which are relied upon by defendant, are distinguishable. In *Christenson, supra,* the defendant owned and operated a business which sold and erected modular or prefabricated houses. The complainants entered into sales agreements and construction contracts with the defendant. Under the terms of the construction contracts, partial payments not to exceed 60 percent of the value of the work in place were to be made to the defendant as he required them. During the course of the construction of complainants' houses and after certain progress payments had been made, the defendant ceased work and filed for bankruptcy. Because certain progress payments of complainants had not been specifically forwarded to the prefabricated home manufacturer but were used to pay other debts, the defendant was charged with larceny by conversion. The Court rejected the prosecutor's argument that conversion was established by the fact that the complainants gave the money to defendant specifically to pay for the home or site preparation and defendant did not use it for that purpose. The Court concluded from the facts of the case that there was no evidence that the complainants intended to retain any title to the progress payments, and that, since both title and possession of the progress payments passed to the defendant, there was no crime of larceny by conversion.

In *Bayer, supra,* the defendant's wife and another individual were partners in a building com-

pany for which the defendant apparently worked. The complainant negotiated with the defendant to purchase a house for $19,000, with a $7,000 down payment. The complainant paid the defendant $4,000 of the $7,000 down payment, then, a few days later, asked for his money back because he had heard that the partnership was going into receivership. The partnership did go into receivership. The *Bayer* Court held that, when the preliminary sales contract was accepted, title to the $4,000 passed to the partnership and the complainant no longer had title to the $4,000. The defendant therefore could not be guilty of conversion.

We recognize that a broad reading of the "specific money" language in *Christenson, supra,* and *Bayer, supra,* could produce the result defendant seeks. However, as indicated those cases are distinguishable on their facts. The "specific money" language in *Christenson* and *Bayer* should be read to mean the specific amount of money to make it identifiable as opposed to the identical money. Any other construction of that phrase would render the conversion of money effectively impossible; a result not indicated in either the language of the statute or the cases. In both *Christenson* and *Bayer,* there was partial performance of the parties' agreements followed by an intervening bankruptcy or receivership. It should be noted that affirmations in *Christenson* and *Bayer* would have yielded a harsh result because the possibility existed in each case that the transactions would have been completed had bankruptcy or receivership not intervened. The lower court did not err in denying defendant's motion to quash or motion for directed verdict.

With respect to defendant's second issue, the lower court gave the following instruction:

"I instruct you that if the custody of the property is

given to the defendant for some limited or special purpose, for example, for a deposit, and the owner has no intent that the money be held or used for any other purpose other than the limited or special purpose for which it was given, then any taking outside of that purpose may be considered as being without the consent of the owner." CJI 23:6:01(a).

Defense counsel raised no objections to the instructions given by the trial court. Therefore, absent manifest injustice, review is precluded. *People v Bragdon,* 142 Mich App 197; 369 NW2d 208 (1985); *People v Broom,* 50 Mich App 337; 213 NW2d 247 (1973). The trial court properly instructed the jury by using CJI 23:6:01 on the elements of larceny by conversion, given the facts of this case. In light of our opinion on the first issue, there was sufficient evidence to defeat the directed verdict motion and for the case to go to the jury. There was no error in the court's instruction.

Thirdly, defendant contends that the Wayne County prosecutor's office abused its discretion in charging him with this crime as a result of a citizen complaint to that office. Defendant's attack upon the prosecutor's office is baseless and deserves only passing attention. The duty to prosecute rests in the prosecutor's sound discretion and he has broad discretion in determining whether to prosecute and what charges to file. *People v Monroe,* 127 Mich App 817, 819; 339 NW2d 260 (1983), citing *United States v Bathelder,* 442 US 114, 124; 99 S Ct 2198; 60 L Ed 2d 755 (1979). See, also, *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974). A review of the facts in this case does not show an abuse of the prosecutor's discretion.

Affirmed.