# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JASON BRADLEY IVES,

Defendant-Appellant.

UNPUBLISHED
May 26, 2015

No. 319687
Menominee Circuit Court
LC No. 12-003516-FH

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

A jury found defendant guilty of larceny by conversion of over $20,000, MCL 750.362, and unlicensed residential building, MCL 339.601(6)(a). Defendant received time served for the unlicensed residential building conviction and five years' probation with the first 11 months in jail for the larceny conviction. Defendant was also ordered to pay $72,684 in restitution. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

On May 16, 2010, defendant, who was a residential builder, entered into a contract with Jeannette and James Andersen for the construction of a 1,850 square foot house on a lot that defendant had arranged for the Andersens to purchase. The contract specified a price of $155,000 and indicated that the home would be completed in six months. In June 2010, the Andersens made a $60,000 payment to start the construction, which they believe included clearing, foundation, permits, and framing. In September 2010, the Andersens made the next $40,000 payment for what they believed would be for a mechanical rough in and insulation.[1]

The Andersens quickly became concerned when work did not progress as expected. When defendant did not complete the work by January 9, 2011, the Andersens contacted the state police and gave a written statement, but did not press charges in the hope that defendant

---

[1] The contract called for a third payment of $30,000 to cover the mechanical interior, a fourth payment of $20,000 for finish work, and a final payment of $5,000 as a contingency to finish anything that was needed.

-1-

would complete the work as promised. Defendant last worked on the home on September 9, 2011.

Defendant acknowledged receiving $100,000 from the Andersens but said the contract was void because the Andersens changed many of the plans. Defendant believed he did $100,000 worth of construction. Defendant admitted that he was convicted of larceny by conversion in Delta County on May 29, 2012 and on July 18, 2012. The incidents leading to the convictions occurred in May, June, and October of 2010. Defendant denied using money that the Andersens gave him to gamble.

Defendant was convicted and sentenced as outlined above and now appeals as of right.

## II. OTHER ACTS EVIDENCE

Defendant argues that the trial court erred when it permitted the prosecutor to introduce evidence of defendant's casino winnings, outstanding debt to the previous landowners of the building site, and that he took foam foundation forms before he paid for them. He maintains that the evidence was introduced solely to demonstrate that defendant was a gambling addict, that he had a propensity to commit the crime, and that he was unreliable with money. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to admit so-called bad acts evidence. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Generally, character evidence cannot be used to show that a defendant acted in conformity therewith because there is a danger that a defendant will be convicted solely upon his history of misconduct rather than on his conduct in a particular case. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence is not subject to MRE 404(b) analysis simply because it discloses a bad act; bad acts can be independently relevant as substantive evidence. *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004), disapproved on other grounds 473 Mich 399, 410 n 22 (2005).

Generally, to be admissible under MRE 404(b), bad acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005).

"Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Under this broad definition, evidence that is useful in shedding light on any material point is admissible. *Id.* at 114. To be material, evidence does not need to relate to an element of the charged crime or an applicable defense. *People v Brooks,* 453 Mich 511, 518; 557 NW2d 106 (1996). Rather, the evidence's relationship to the elements of the charge, the theories of admissibility, and the defenses asserted govern. *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008).

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001). Where requested, the trial court may provide a limiting instruction under MRE 105. *People v Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000).

## A. CASINO WINNINGS

Denise Nichols, the vault director at The Island Resort and Casino who recorded slot machine jackpots that exceeded $1,200, testified that defendant won $30,803 in slot machine jackpots between May 2010 and November 22, 2010. A state police detective testified regarding numerous cash withdrawals from the bank account of defendant's construction company during this time.

As previously indicated, MRE 404(b) is not implicated unless the defendant's character can be inferred from the act and the conduct in question can be inferred from the defendant's character. "[I]f the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated." *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), modified 445 Mich. 1205 (1994). Contrary to defendant's assertion, the prosecution's questions concerning defendant's casino winnings did not elicit bad act evidence, but relevant evidence under MRE 401. Although the evidence established extensive casino activity, the purpose for which the evidence was admitted was to demonstrate defendant's intent and motive in receiving and using the Andersens' money for his own purposes, specifically, to gamble. The overlap of activity between the Andersens' payments to defendant, the frequent cash withdrawals, and the intense gambling activity, as demonstrated by the recurring jackpots, at a time the construction was supposed to progress demonstrates a possible motive to receive the money for personal use, and the intent to use the money at the casino. Thus, the evidence was admitted for a proper purpose and was relevant to defendant's intent. The value of this evidence substantially outweighed any prejudicial effect of knowing that defendant gambled intensely.

## B. LAND TRANSACTION

Michelle and Dale Wieciech sold property to the Andersens through defendant. Michelle stated that they agreed with defendant to sell him two acres on which to build a home for someone for $20,000. Pursuant to the May 18, 2010 sales agreement the Andersens gave defendant $15,000 for the property. Defendant paid the Wiecieches $10,000 at signing but then only sporadically thereafter and continued to owe them $7,000.

The evidence was relevant to defendant's intent to use the money for his own purposes and to show defendant's motive, plan, and scheme. The evidence was offered for the purpose of demonstrating what defendant did, or more accurately, did not do with the money that the Andersens provided for the land purchase. This was a proper purpose as it was not offered as evidence of defendant's character; rather, it was relevant to defendant's motive and plan not to use the Andersens' money on the construction project. The minimal prejudice inherent in the evidence did not substantially outweigh its probative value. Thus, the trial court did not abuse its discretion in admitting evidence of defendant's transactions regarding the parcel on which he was to build.

## C. FOUNDATION MATERIAL

Melvin Sternberg, the president of U.P. Concrete, which sold foam concrete forms for foundations, testified that he would not allow defendant to use his products before payment and determined that missing forms were being used at the Andersen construction site. Ultimately, defendant told Sternberg what he took and Stenberg prepared a $4,036 bill and garnished defendant's wages through small claims court.

The prosecutor's purpose in offering the evidence was to illustrate defendant's intent to convert the money provided by the Andersens from its original purpose to personal use. The evidence was relevant in directly addressing the crime with which defendant was charged and to show that defendant was not using money provided by the Andersens to purchase materials to construct the foundation. The minimal prejudice inherent in the evidence did not substantially outweigh its probative value in showing use of the Andersens' money for his own purposes. Thus, the trial court did not abuse its discretion in admitting evidence of defendant's failure to pay for construction materials for which he was provided funds.

## D. CUMULATIVE EFFECT

Because the trial court did not abuse its discretion in admitting any of the instances of other acts evidence, there was no cumulative error. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007),

## III. PROSECUTORIAL ERROR

Defendant argues that the prosecutor elicited inflammatory and prejudicial character evidence that defendant had a gambling problem and had outstanding debts. It is true that a prosecutor's "deliberate and concerted effort to introduce highly prejudicial but totally irrelevant material at trial for the sole purpose of gaining a conviction at any cost" may be reversible error because it denies the defendant a fair trial. *People v Morgan*, 86 Mich App 226, 227; 272 NW2d 249 (1978). However, as we have just discussed, the complained-of evidence was admissible to show what defendant did or did not do with money from the Andersens. The parties extensively argued before the trial court about the admissibility of this evidence, and the trial court was able to make a reasoned decision regarding its admissibility. "A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *People v Abraham*, 256 Mich App 265, 278-279; 662 NW2d 836 (2003). It is not prosecutorial misconduct to introduce

evidence expressly permitted by the trial judge. *People v Curry*, 175 Mich App 33, 44; 437 NW2d 310 (1989).

## IV. JURY INSTRUCTIONS

Defendant argues that the trial court erred when it failed to sua sponte instruct the jury that consideration of other acts evidence was limited to its purpose and was not allowed as substantive evidence of guilt. Alternatively, defendant argues that he received ineffective assistance of counsel when counsel failed to request such an instruction.

"This Court reviews unpreserved claims of instructional error for plain error that affect substantial rights. A reviewing court should reverse only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Rodriguez*, 251 Mich App 10, 24; 650 NW2d 96 (2002) (internal citations omitted).

Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his right to counsel is reviewed de novo. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002).

Defendant argues that he was denied a fair trial because the trial court failed to instruct the jury that it could consider the other acts evidence only for the limited purpose for which it was offered. A "defendant is entitled to a carefully crafted limiting instruction advising the jurors that they are to consider the other acts evidence only as indicative of the reasons for which the evidence is proffered to cushion any prejudicial effect flowing from the evidence." *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002). However, there was no request for a limiting instruction. Without a request or an objection, a trial court has no duty to provide a limiting instruction of its own volition, even where the instruction should have been given. *People v Rice*, 235 Mich App 429, 443-444; 597 NW2d 843 (1999).

Defendant argues that his trial counsel was ineffective in failing to request a limiting instruction. "To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Defense counsel's decisions are presumed sound trial strategy. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007).

Defendant argues that there was no trial strategy involved in allowing the jury to consider evidence of defendant's character to commit crimes in determining whether he committed the crime. However, it is possible trial strategy to not request a limiting instruction so as to avoid drawing attention to the evidence with the instruction. Defendant's trial attorney argued strongly against admission of the evidence outside of the jury's presence. Additionally, the evidence was

evidence of the crime for which defendant was charged, and not strictly evidence of other acts of misconduct.

## V. APPRAISER'S TESTIMONY

Defendant next argues that the trial court erred in admitting evidence of a real estate appraisal on the partially completed home. He maintains that the evidence was irrelevant as the value of a home was not equal to the cost of labor and materials used to build the home. We disagree.

"We review for an abuse of discretion a trial court's decision to admit or exclude evidence." *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). "Where the admission of evidence involves a preliminary question of law, we review that question de novo." *Id*.

On June 27, 2011, real estate appraiser Elmer Bessonen evaluated the Andersens' home and assessed that the home was approximately one-third complete at the time of appraisal with 25 percent of what was completed requiring replacement due to weather damage. Bessonen calculated the value of the home at $41,000.

Here, defendant argues that the appraisal was irrelevant because the appraised market value of the uncompleted home did not relate to an element of conversion, i.e., the amount of the Andersens' money used by defendant for his own purposes. However, as the trial court noted, the evidence was relevant to the value or amount of defendant's work as compared to the amount of work for which the Andersens paid. Defendant was charged with converting over $20,000 of the Andersen's money for his own use. As a result, the value of the work performed was relevant because it demonstrated the dollar amount of work that was not performed.

Further, defendant was able to question the value of this evidence. On cross examination, defendant elicited that the appraiser did not know the costs of the materials or labor incurred to partially construct the structure. Additionally, defendant was able to present the testimony of a building contractor who stated that an appraisal of the market value of a home was not the same as the labor and material costs of the home. The trial court did not abuse its discretion in finding that the appraisal testimony was relevant. Defendant's arguments go to the weight, rather than the admissibility, of the evidence.

## VI. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented to the jury was insufficient to find him guilty of larceny by conversion where the prosecution failed to prove that defendant intended to convert the Andersens' money at the time it was offered and, in fact, defendant immediately used the money to make significant progress in constructing the home. Defendant also argues that he could not have committed larceny because title to the money had already transferred from the Andersens to defendant. We disagree on both points.

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the

evidence in the light most favorable to the prosecutor to ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, when viewed in a light most favorable to the prosecution, are considered to determine whether the evidence was sufficient to support the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

Defendant was convicted of larceny by conversion of over $20,000, MCL 750.362. In order to convict defendant of larceny by conversion, plaintiff was obligated to prove that

> (1) the property at issue must have some value, (2) the property belonged to someone other than the defendant, (3) someone delivered the property to the defendant, irrespective of whether that delivery was by legal or illegal means, (4) the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use it, and (5) at the time the property was embezzled, converted, or hidden, the defendant intended to defraud or cheat the owner permanently of that property. [*People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001)(internal quotation marks and footnotes omitted).]

Defendant argues that the evidence did not support the conclusion that he intended to defraud the Andersens of their money at the time he used the money. He argues that he made progress in building the home by using the money on the home. However, the evidence demonstrated that the Andersens provided $60,000 to defendant on June 3, 2010 and defendant withdrew $59,610 through large cash and check withdrawals by June 14, 2010. Despite some limited work, defendant stated that delays postponed the full start of the initial work until August, well after it appears that the $60,000 was spent. In contrast to the lack of construction during the period when defendant was spending approximately $60,000, evidence showed that defendant was active at the casino.

By August, 2010, defendant was asking the Andersens for the next payment of $40,000 in order to frame the home. The Andersens paid defendant $40,000 on September 2, 2010 and also paid $2,230 for trusses that they wanted. The check was deposited the following day. By September 10, 2010, defendant had withdrawn $39,800, mostly in periodic large cash withdrawals. Evidence demonstrated that the first $100,000 was spent by September 10, 2010. Additionally, as previously discussed, the Andersens paid defendant $15,000 to purchase the property and defendant paid $10,000 initially and only made sporadic payments totaling $3,000 to the property sellers. The evidence indicated that defendant did not use the three large payments from the Andersens for their contractual purposes. .

Because it is difficult to prove an actor's state of mind, minimal circumstantial evidence is sufficient. *Ericksen*, 288 Mich App at 197. At the time defendant received and was spending the money from the Andersens, the evidence indicated that his intent was to use the money for his own purposes and defraud the Andersens of money they intended for construction. The direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, when viewed in a light most favorable to the prosecution, is sufficient to support defendant's conviction for larceny by conversion over $20,000 beyond a reasonable doubt. The jury was able to consider the testimony of the parties and view all of the exhibits, including the receipts

and photographs of construction progress. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008)

Defendant also claims that there could be no larceny when both title and possession of the Andersen's money passed to him. Larceny by conversion occurs "where a person obtains possession of *another's* property with lawful intent, but subsequently converts *the other's property* to his own use." *Mason*, 247 Mich App at 72 (emphasis supplied). Here, the construction contract required the Andersens to pay defendant for each phase of construction. In other words, the Andersens paid defendant $60,000 in advance to perform the initial phase of home construction and expected that the money would be returned should defendant not complete the phase. The agreement then provided for the Andersens payment of $40,000 to complete framing of the home and the Andersens retained title, not possession of the funds, until the framing was complete. Thus, the Andersens intended to retain title to their money until the work in each phase was completed. The Andersens entrusted their money to defendant, who could not do with it what he wished, and retained title to the money until defendant completed his obligation. See *People v Mason*, 247 Mich App 64, 75-77; 634 NW2d 382 (2001); *People v O'Shea*, 149 Mich App 268, 270-275; 385 NW2d 768 (1986).

## VII. RESTITUTION

This Court reviews for an abuse of discretion a restitution order. *People v Gubachy,* 272 Mich App 706, 708; 728 NW2d 891 (2006). "The proper application of . . . statutes authorizing the assessment of restitution at sentencing is a matter of statutory interpretation, which we review de novo." *People v McKinley*, 496 Mich 410, 414-415; 852 NW2d 770 (2014).

Both the Crime Victim's Rights Act (CVRA), MCL 780.751 et seq., and the general restitution statute, MCL 769.1a, provide that sentencing courts "shall order" convicted defendants to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." MCL 769.1a(2); MCL 780.766(2); *People v Garrison*, 495 Mich 362, 367; 852 NW2d 45 (2014). The purpose of restitution laws is "to enable victims to be compensated fairly for their suffering at the hands of convicted offenders." *Garrison*, 495 Mich at 368. This purpose is served by ordering defendants to "pay complete, entire, and maximum restitution." *Id*.

In order to determine the amount of restitution to order, "the court shall consider the amount of the loss sustained by any victim as a result of the offense." MCL 780.767(1). A calculation of the amount of loss should be based on the evidence. *People v Cross*, 281 Mich App 737, 738; 760 NW2d 314 (2008), citing *People v Guajardo,* 213 Mich App 198, 200; 539 NW2d 570 (1995). The prosecution must prove the amount of the victim's loss by a preponderance of the evidence. MCL 780.767(4).

Restitution is ordered for "only those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *People v Orweller,* 197 Mich App 136, 140; 494 NW2d 753 (1992). Restitution is authorized only for loss that results from a "defendant's course of conduct that gives rise to the conviction." *Garrison*, 495 Mich at 372. The restitution statute

requires a "direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded. *McKinley*, 496 Mich at 421.

A trial court may abuse its discretion in ordering restitution where it blurs the distinction between a civil remedy and the criminal penalty of restitution. *Orweller*, 197 Mich App at 140. "Restitution awarded by a sentencing court is not a substitute for civil damages, but encompasses only those losses which are easily ascertained and measured and are a direct result of a defendant's criminal acts." *People v Tyler*, 188 Mich App 83, 89-90; 468 NW2d 537 (1991).

Defendant complains that the probation officer's recommendation considered the breach of contract. However, the Andersens' financial loss as a direct result of defendant's larceny by conversion included the amount spent by the Andersens to construct the home through the framing stage, which included replacing damaged materials. Thus, defendant's crime directly caused the Andersens to spend more money to completely frame the home. The Andersens would not have had this expense except for defendant's conversion. Additionally, the Andersens relied on defendant's promise and sold their former home, leaving them without accommodation because defendant did not finish the new home as promised. Therefore, defendant's conversion directly caused the Andersens to incur expenses for renting accommodations and storage.

The trial court did not discuss the contract in calculating restitution. Instead, the trial court calculated the labor and materials the Andersens had to pay in order to completely frame the home, including materials and labor, and the cost to replace the damaged materials and rent housing and storage. All of these financial losses were directly caused by defendant's conduct in converting the Andersen's money for his own use. The trial court did not abuse its discretion in ordering restitution of $72,684 as the total amount of loss caused by defendant's criminal conduct.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto