# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

JAY DEE SPENCER,

      Defendant-Appellee.

FOR PUBLICATION
August 10, 2017
9:10 a.m.

No. 337045
Kent Circuit Court
LC No. 16-008983-FH

---

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

MURPHY, J.

The prosecution appeals by leave granted[1] the circuit court's order denying its motion to amend the information to reinstate a count of larceny by conversion of $20,000 or more, MCL 750.362; MCL 750.356(2)(a), which count the district court had dismissed following defendant's preliminary examination. The district court did bind defendant over to the circuit court on charges of obtaining money by false pretenses in the amount of $20,000 or more but less than $50,000, MCL 750.218(5)(a), and embezzlement by an agent or trustee of $20,000 or more but less than $50,000, MCL 750.174(5)(a). The false pretenses and embezzlement counts are not at issue on appeal. We hold that the circuit court abused its discretion when it denied the prosecution's motion to amend the information, where there was sufficient evidence establishing probable cause to believe that defendant committed the offense of larceny by conversion, and where amendment of the information would not have unfairly surprised or prejudiced defendant. Accordingly, we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

Our summarization of the case is based on evidence presented by the prosecution at defendant's preliminary examination, which evidence defendant is of course free to challenge at trial. Using funds held in his IRA, the complainant, through a trust company acting as custodian of the IRA, loaned $241,000 to Mackinac Advisory Services, LLC (MAS), pursuant to an agreement specifying that all of the funds were to be used by MAS for the acquisition and rehabilitation of six identified real properties in the Grand Rapids area, with MAS promising in

---

[1] *People v Spencer*, unpublished order of the Court of Appeals, entered March 9, 2017 (Docket No. 337045).

return to pay the complainant $257,870 within 120 days of the loan disbursement. The repayment obligation in the amount of $257,870 was not dependent on the success of the business venture. The agreement was reflected in a direction-of-investment letter signed by the complainant, a promissory note executed by defendant on behalf of MAS, and a mortgage on the properties given by MAS to secure the note, which was also signed by defendant. Defendant held no ownership interest in or employment position with MAS; however, the individual who formed and owned MAS testified that defendant facilitated MAS's transactions as its real estate agent and was authorized to direct the disbursement of funds on behalf of MAS for purposes of purchasing properties and construction projects.[2]

While the details are confusing regarding the particular flow and use of the $241,000 after being transferred from the IRA under the loan agreement, we need not concern ourselves with most of these intricacies. Pertinent here is evidence that defendant eventually directed the movement of at least $20,000 of the $241,000 into accounts held by Mackinac Realty Group, a company solely owned and managed by defendant, and that defendant then used these funds to pay for personal items and expenses unassociated with the acquisition and rehabilitation of real estate as contemplated in the underlying agreement. Although some of the IRA money lent to MAS was actually used for its designated purpose, no payment was made to the complainant or his IRA upon expiration of the 120-day period. The complainant did obtain a civil judgment against his financial advisor who orchestrated the loan and transaction, against MAS's owner, and against defendant.

II. PROCEDURAL HISTORY

In February 2016, the prosecution charged defendant with larceny by conversion over $20,000, and he was bound over to the circuit court after waiving his right to a preliminary examination. However, the circuit court later granted defendant's motion to dismiss the charge, concluding that the charge was not viable under the caselaw and the factual circumstances. The circuit court next denied the prosecution's motion for reconsideration, but it did indicate that the prosecution could refile the charge in the future if new evidence came to light supporting the offense of larceny by conversion. The prosecution did not appeal the circuit court's ruling to this Court.

Although no new evidence was truly developed, in July 2016, the prosecution filed a three-count complaint, once again charging defendant with larceny by conversion, along with the false pretenses and embezzlement charges. Following a preliminary examination, the district court bound defendant over to the circuit court on the offenses of embezzlement and false pretenses, but not on the crime of larceny by conversion, expressing deference to the circuit court's previous ruling on the charge. In a motion to amend the information, see *People v*

---

[2] The note and the mortgage documents did indicate that defendant was MAS's CEO, which was untrue, but MAS's owner did not have any qualms about defendant executing the documents on behalf of MAS.

*Goecke*, 457 Mich 442, 455-456; 579 NW2d 868 (1998),[3] the prosecution asked the circuit court to reinstate the charge of larceny by conversion. The circuit court, consistent with its earlier ruling in the initial prosecution of defendant, denied the prosecution's motion, finding that the facts simply did not support a charge of larceny by conversion under the caselaw construing the statutory offense. The prosecution appeals by leave granted.

## III. ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). And a trial court abuses its discretion when it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008) (citation omitted). "A trial court . . . necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015) (citation omitted). "In addition, because the standard of review is abuse of discretion, the defendant is protected by the time-honored principle that the circuit court may not substitute its judgment for that of the magistrate." *Goecke*, 457 Mich at 462. Insofar as the circuit court's decision involves the interpretation of a statute, this Court's review is de novo. *People v Chavis*, 468 Mich 84, 91; 658 NW2d 469 (2003).

### B. STATUTORY CONSTRUCTION PRINCIPLES

With respect to the principles that govern our interpretation of a statute, in *People v Flick*, 487 Mich 1, 10-11; 790 NW2d 295 (2010), the Michigan Supreme Court observed:

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. [Citations and some quotation marks omitted.]

And in regard to construing statutory offenses contained in the Penal Code, such as, under MCL 750.362, larceny by conversion, MCL 750.2 provides:

> The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be

---

[3] The *Goecke* Court agreed with the argument "that where a district court binds a defendant over on one of two counts, review of the dismissed count is obtainable by a motion to amend the information [filed in the circuit court.]" *Goecke*, 457 Mich at 455-456.

construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

## C.  AMENDING AN INFORMATION AND PRELIMINARY EXAMINATIONS

"The court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant."  MCR 6.112(H).  "Where a preliminary examination is held on the very charge that the prosecution seeks to have reinstated, the defendant is not unfairly surprised or deprived of adequate notice or a sufficient opportunity to defend at trial[.]"  *Goecke*, 457 Mich at 462.

In *Goecke, id.* at 469-470, our Supreme Court explained the general nature of a preliminary examination:

> For purposes of preliminary examination, the proofs adduced must only establish probable cause to believe that a crime was committed and probable cause to believe that the defendant committed it. If the district court determines that "probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it," the defendant must be bound over for trial. MCR 6.110(E). Some evidence must be presented regarding each element of the crime or from which those elements may be inferred. It is not, however, the function of the examining magistrate to discharge the accused when the evidence conflicts or raises a reasonable doubt of the defendant's guilt; that is the province of the jury.  [Citations omitted.]

## D.  DISCUSSION AND HOLDING

The crux of the dispute in this case is whether a person commits the crime of larceny by conversion when the person, as the recipient of a loan, converts the loan proceeds to his or her own use and employs them in a manner that is inconsistent or conflicts with specific restrictions or conditions demanded by the lender in the underlying loan agreement regarding how the loan proceeds are to be used upon disbursement.  MCL 750.362 provides:

> Any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny and shall be punished as provided in the first section of this chapter.[4]

---

[4] MCL 750.356 provides, in relevant part:

> (2) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00 or 3 times the value of the property stolen, whichever is greater, or both imprisonment and a fine:

> (a) The property stolen has a value of $20,000.00 or more.

In *People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001), this Court recited the following elements of larceny by conversion:

> (1) the property at issue must have some value, (2) the property belonged to someone other than the defendant, (3) someone delivered the property to the defendant, irrespective of whether that delivery was by legal or illegal means, (4) the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use it, and (5) at the time the property was embezzled, converted, or hidden, the defendant intended to defraud or cheat the owner permanently of that property. [Quotation marks and citation omitted.]

"The purpose of the larceny by conversion statute is to cover one of the situations left unaccounted for by common-law larceny, that is, where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use." *People v Christenson*, 412 Mich 81, 86; 312 NW2d 618 (1981); see also *Mason*, 247 Mich App at 72. Larceny by conversion constitutes "a crime against possession and not against title; one cannot convert his own funds." *Christenson*, 412 Mich at 87 (citations omitted). Accordingly, when an owner intends to part with his or her title to property as well as possession, a charge of larceny by conversion is not viable. *Id.* Here, there is no dispute that the complainant intended to pass possession of the $241,000 in IRA funds to MAS. The question is whether there was an intent to part with *title* to the money when the loan was disbursed.

The principal cases discussed by the parties are *Christenson*, 412 Mich 81, *People v Franz*, 321 Mich 379; 32 NW2d 533 (1948), *Mason*, 247 Mich App 64, and *People v O'Shea*, 149 Mich App 268; 385 NW2d 768 (1986). In *Franz*, *Mason*, and *O'Shea*, this Court and our Supreme Court held that the evidence supported a charge of or conviction for larceny by conversion. "In *Franz*, . . . there was an oral contract whereby the defendant agreed to purchase iron for the complainant who had given to the defendant the sum of $4,080[,]" but "[n]o delivery of iron was made . . . ." *O'Shea*, 149 Mich App at 273 (concisely summarizing the facts in *Franz*). In *O'Shea* itself, *id.* at 270-272, the complainant and the defendant had entered into a written contract pursuant to which the defendant accepted a $125 check, which was later deposited by the defendant, as a down payment for upholstering fabric; however, neither fabric nor a refund was ever delivered to the complainant. *Mason* involved five transactions, evidenced by written contracts, wherein the defendant failed to refund money that the complainants had given him as down payments on the purchase of mobile homes that were never delivered to the complainants. These cases stand for the proposition that the offense of larceny by conversion may be committed when a defendant fails to use money delivered by a complainant for an agreed-upon designated purpose in the context of the complainant's purchase of goods or property, with the defendant also failing to refund the money to the complainant.

The instant case does not involve a sales or purchase agreement, but rather a loan agreement. However, just like in *Franz*, *Mason*, and *O'Shea*, there was evidence that, pursuant to an agreement, money was delivered by our complainant, reaching the hands of defendant, and that the money was designated for a specific purpose or use that was not fulfilled, at least in part, absent any refund of the money. We find the following passage from *Mason* instructive on the issue of intent to pass title:

> We gather from the *O'Shea* Court's emphasis on the facts of the case before it as well as the facts of the contrary cases that we must look at the facts

surrounding each complainant's transfer of money to Mason to determine whether they each intended to retain title to the money. As in *O'Shea,* we think it plain under the circumstances of the five cases being appealed, including the contracts for sale, that each complainant *intended to retain legal title to the down payment money, though not possession of it, until each complainant received the home each sought to purchase.* It would make little sense for each of these complainants to intend to give their hard-earned money to Mason to keep irrespective of whether they ever received the home for which they bargained, especially with no contractual provision to that effect. [*Mason*, 247 Mich App at 74-75.]

By analogy, we hold that there was evidence that complainant intended to retain legal title to the loan proceeds, though not possession of the funds, until such time that the loan proceeds were actually used to pay for the acquisition and rehabilitation of the six properties. As reflected in the direction-of-investment letter signed by complainant and his testimony at the preliminary examination, it was his intent that the money from his IRA that was loaned to MAS and disbursed by or at the behest of defendant was specifically to be used to purchase and rehabilitate the six identified Grand Rapids properties.

In *Christenson*, the case upon which defendant mainly relies, the Supreme Court reversed the defendant's convictions on three counts of larceny by conversion. The defendant in *Christenson* sold and erected modular homes, and he had entered into written contracts with three complainants who made progress payments to the defendant under the contracts as he delivered and erected their modular homes. However, certain progress payments were not specifically forwarded to the manufacturer of the modular homes. Instead, the defendant, who eventually filed for bankruptcy, used those progress payments to pay other debts. *Christenson*, 412 Mich at 85-86. The Court held that there was no evidence that the complainants had intended to retain title to the progress payments made to the defendant, and therefore, title passed to the defendant, making it impossible for him to have committed the crime of larceny by conversion. *Id.* at 88. The Court did not stop there, and proceeded to state:

> Even if we were to accept the argument that defendant was not the intended owner of the progress payments and that he was merely a trustee of the funds, we do not find that the element of conversion has been established. The prosecutor contends that conversion is established by the fact that the complainants gave the money to defendant for a specific purpose, i.e., to pay for the home or for site preparation, but defendant did not use it for that purpose.
>
> * * *
>
> It is clear in this case that defendant used partial payments for work in place to pay debts that were not the specific debts incurred in construction of the work in place. He subsequently was unable to pay the latter debts because of his impending bankruptcy. However, there was no agreement that defendant apply the specific funds he received from complainants for particular work to pay the laborers and materialmen responsible for that work. There was no requirement that defendant establish a separate trust account for each complainant in which he would deposit that particular complainant's funds.

It is beyond dispute that defendant had the contractual obligation to pay the debts of the work in place for which he received progress payments from the complainants. However, there was nothing to preclude defendant from paying for those debts with funds other than the identical moneys he received from complainants. The fact that defendant's bankruptcy intervened to preclude such payment does not render defendant guilty of larceny by conversion. [*Id.* at 88-90.]

The *Mason* panel, distinguishing *Christenson*, stated that "[i]n *Christenson,* the homeowners who made progress payments to the defendant did so because the defendant had, in fact, made progress on the construction project and, therefore, was entitled to this partial payment" under the contracts. *Mason*, 247 Mich App at 76. This Court further observed that the defendant in *Christenson* would have been guilty of larceny by conversion had he specifically agreed to use the progress payments to pay certain debts, including the one owed to the manufacturer of the modular homes. *Id.* The *Mason* panel explained that such would be the case because "[t]he defendant, though in actual possession of the money, never would have obtained legal title to the money under those facts because he could not do with it as he wished, *a limitation that generally does not exist for title owners of property.*" *Id.* at 76-77 (emphasis added). Instead, "because the homeowners and the defendant agreed neither that the defendant would use the progress payments only to satisfy the particular debts at issue nor that he would keep the money for that purpose in a special account, the Supreme Court was compelled to reverse the defendant's conviction." *Id.* at 78-79.

The present case is distinguishable from *Christenson* for the very same reason, i.e., there was evidence of an agreement that did not allow MAS to do whatever it wished with the loan proceeds. Rather, the loan was specifically conditioned on the agreement that it would be used to acquire and rehabilitate the six identified properties. Thus, title would not have passed unless and until the loan was used for its intended purpose. Because there was evidence that title to at least $20,000 of the $241,000 loan did not pass to MAS or defendant, as it was not used as intended and directed under the loan agreement, and that defendant converted that $20,000 or more to his own use contrary to the loan agreement, there was sufficient evidence establishing probable cause to believe that defendant committed the crime of larceny by conversion. And considering that the preliminary examination was held on the very charge that the prosecution sought to have reinstated in its motion to amend the information, we cannot find that defendant would be unfairly surprised or prejudiced by allowing the requested amendment. *Goecke*, 457 Mich at 462. Accordingly, the circuit court abused its discretion in denying the prosecution's motion to amend the information to reinstate the charge of larceny by conversion, mainly because the court committed an error of law relative to its construction of MCL 750.362 and the caselaw interpreting the statute.

Reversed and remanded for entry of an order granting the prosecution's motion to amend the information so as to reinstate the charge of larceny by conversion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly