*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL PATRICK RILEY,

Defendant-Appellant.

UNPUBLISHED
December 12, 2024
10:20 AM

No. 364257
Lenawee Circuit Court
LC No. 2021-020581-FH

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant was convicted by a jury of larceny by conversion of property with a value of $20,000 or more, MCL 750.356(2)(a), MCL 750.362, and sentenced to three years' probation, suspending a 12-month jail term. He appeals as of right. We vacate defendant's conviction due to the trial court's failure to direct a verdict for defendant.

This case arises from a business defendant operated under the name Momentum Marketing Specialists, LLC. The business sold advertisements to local businesses and compiled them in a book it annually produced, known as the "Monkey Book," which was distributed to residents of Lenawee County. Residents could use it as a resource to contact local businesses. Advertising space was sold to businesses in 2014 for the 2015 book, but defendant never printed a copy of the book to distribute in 2015.

The prosecution's theory was that defendant knew that his business was failing in 2014, but that he continued to sell the advertising space to businesses who gave him the money expecting to see their advertisements published in the 2015 book. One former salesperson who worked for Momentum Marketing and collected over $100,000 in payments testified that defendant knew by the end of 2014 that he was not going to be able publish the Monkey Book in 2015, but he believed that no one would know that the book was not printed and distributed in 2015. The prosecution claimed that defendant was paid to provide advertising, but those who gave him the money never got what they paid for and never obtained a refund. Defendant also hid from his customers the fact that Momentum Marketing was failing.

The prosecution showed that defendant paid multiple personal expenses using Momentum Marketing's business account instead of spending the money on producing the Monkey Book for 2015. Defendant paid for trips, country club fees, dining, and housing expenses with Momentum Marketing's bank account. Because defendant was the sole owner of Momentum Marketing, it was not improper for him to use the business's account to pay his personal expenses, but the prosecution attempted to show that defendant used the money for his personal expenses instead of paying for the printing of the book in 2015.

The defense claimed that this was simply a matter of a failed business venture and that defendant was able to publish the Monkey Book every year from 2004 through 2014, but it lacked the funds to publish the 2015 edition. Thus, there was no scheme to cheat those who bought advertising. Money collected from the sale of advertising went to paying business expenses, including producing the book.

The defense claimed that the money advertisers paid was voluntarily transferred to Momentum Marketing without any restrictions and that defendant was free to use it in any manner whatsoever. While the advertisers might not have received what they paid for, that was not a crime when there was no intent to commit larceny or convert the funds.

Defendant argues that the evidence was insufficient for the jury to convict him of larceny by conversion. We agree with defendant's argument that the evidence was insufficient to support the conviction.

Defendant preserved this issue by moving for a directed verdict. *People v Lugo*, 214 Mich App 699, 711; 542 NW2d 921 (1995). When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecution, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in the prosecution's favor. *Id*.

Larceny by conversion is a statutory offense and it is intended to close a gap among property offenses. *People v Christenson*, 412 Mich 81, 86; 312 NW2d 618 (1981). The offense applies to a situation not addressed by common-law larceny where one obtains possession of another's property initially with lawful intent, but then converts the other's property to his own use. *Id*.

MCL 750.362 provides as follows:

> Any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or

fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny and shall be punished as provided in the first section of this chapter [MCL 750.356.]

MCL 750.356(2)(a) provides that larceny involving property valued at $20,000 or more is a felony.

The elements of larceny by conversion involve (1) the property must have some value, (2) the property belonged to someone other than the defendant, (3) the property was delivered to the defendant, without regard to whether it was through legal or illegal means, (4) the defendant embezzled, converted for his own use, or hid the property with the intent to embezzle or fraudulently use the property, and (5) at the time the defendant embezzled, converted, or hid the property, he intended to defraud or cheat the owner permanently of that property. *People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001).

In *People v Spencer*, 320 Mich App 692, 700-701; 909 NW2d 17 (2017), this Court discussed the nuances of the offense:

"The purpose of the larceny by conversion statute is to cover one of the situations left unaccounted for by common-law larceny, that is, where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use." *People v Christenson*, 412 Mich 81, 86; 312 NW2d 618 (1981). See also *Mason*, 247 Mich App at 72. Larceny by conversion constitutes "a crime against possession and not against title; one cannot convert his own funds." *Christenson*, 412 Mich at 87. Accordingly, when an owner intends to part with his or her title to property as well as possession, a charge of larceny by conversion is not viable. *Id*. In this case, there is no dispute that the complainant intended to pass possession of the $241,000 in IRA funds to MAS. The question is whether there was an intent to part with *title* to the money when the loan was disbursed. [Emphasis in original.]

The Court in *Spencer*, 320 Mich App at 701-702, summarized the leading cases in this area:

The principal cases discussed by the parties are *Christenson*, 412 Mich 81, *People v Franz*, 321 Mich 379; 32 NW2d 533 (1948), *Mason*, 247 Mich App 64, and *People v O'Shea*, 149 Mich App 268; 385 NW2d 768 (1986). In *Franz*, *Mason*, and *O'Shea*, this Court and our Supreme Court held that the evidence supported a charge or conviction of larceny by conversion. "In *Franz*, . . . there was an oral contract whereby the defendant agreed to purchase iron for the complainant who had given to the defendant the sum of $4,080," but "[n]o delivery of iron was made . . . ." *O'Shea*, 149 Mich App at 273 (concisely summarizing the facts in *Franz*). In *O'Shea* itself, *id*. at 270-272, the complainant and the defendant had entered into a written contract pursuant to which the defendant accepted, and later deposited, a $125 check as a down payment for upholstering fabric; however, neither fabric nor a refund was ever delivered to the complainant. The *Mason* case involved five transactions, evidenced by written contracts, wherein the defendant

failed to refund money that the complainants had given him as down payments on the purchase of mobile homes that were never delivered to the complainants. *Mason*, 247 Mich App at 66-69. These cases stand for the proposition that the offense of larceny by conversion may be committed when a defendant fails to use money delivered by a complainant for an agreed-upon designated purpose in the context of the complainant's purchase of goods or property, with the defendant also failing to refund the money to the complainant.

In *Spencer*, 320 Mich App at 695-696, the agreement involved a loan made to acquire and rehabilitate real properties. The defendant apparently diverted some of the money to another account and used those funds for personal expenses unrelated to the loan agreement. *Id*. at 696. The complainant also did not receive repayment of the loan, per the terms of the agreement. *Id*. The Court in *Spencer*, 320 Mich App at 705-706, held that the facts supported larceny by conversion when title to the money never passed to the defendant and those who received the complainant's funds could not do as they wished with the loan proceeds.

In *Christenson*, 412 Mich at 85-86, 90, the Court held that the defendant, who sold and erected modular homes, could not be convicted of larceny by conversion. The defendant entered into sales and construction agreements with the complainants. The agreements to erect the homes required progress payments. After some payments were made, the defendant ceased work because of financial difficulties. *Id*. Briefly, because the agreements contemplated payment for work as it progressed on the homes, there was no evidence that the complainants intended to retain title to those payments. *Id*. at 87-88.

There also was no agreement that the specific funds given to the defendant were to be used to pay for the particular work involved in the progress payments. *Id*. at 89-90. The Court explained that conversion was not established because conversion of money cannot be proven unless there was an obligation on the part of the defendant to deliver specific money to the complainant. *Id*. at 89. In *Christenson*, 412 Mich at 89-90, "there was no agreement that defendant apply the specific funds he received from complainants for particular work to pay the laborers and materialmen responsible for that work." While the defendant had a contractual obligation to pay the debts for work performed related to the progress payments, the defendant's bankruptcy precluded paying those debts, but that was insufficient to prove the elements of larceny by conversion. *Id*. at 90.

We believe that this case is similar to the facts in *Christenson*, rather than the cases involving deposits given to a defendant for acquiring specific goods that were never delivered and no refund was issued, such as *Franz*, 321 Mich at 382-387 (payment made for delivery of iron) and *O'Shea*, 149 Mich App at 270-275 (deposit made for ordering upholstery fabric). The record does not show that the contracts for advertising were interpreted as deposits toward printing of the Monkey Book. Instead, the evidence showed that the complainants intended to part with both title and possession of the property (the payments for advertising), which means that larceny by conversion is not viable. *Spencer*, 320 Mich App at 701. The complainants here purchased advertising services for publication. Those who gave Momentum Marketing payments for advertising were not purchasing the actual book, but the services of the company to produce that book. Advertisements were prepared for those who entered contracts. Work began on designing the book for 2015. Defendant did not have the money to print the book and distribute it after a year of selling advertisements. Even though the final book was not printed and distributed, the

facts did not prove that defendant or Momentum Marketing collected the money with no intention of producing it with the advertisements the complainants purchased.

Moreover, there was no dispute that defendant owned and controlled Momentum Marketing alone and, while he used the business account to pay his personal expenses, he was not accountable to anyone but the IRS regarding the use of his business account. Nothing in the contracts Momentum Marketing entered with the complainants limited how it could spend that money.

Although there was evidence that defendant said that he would not produce the Monkey Book in 2015 because the complainants or advertisers would be unaware that it was never printed, this statement was attributed to comments he made later in 2014, when it was apparent that Momentum Marketing was in financial straits. That statement, in isolation, fails to prove that defendant collected the money for the 2015 Monkey Book with an intent to defraud the complainants. Defendant's failure to be upfront about Momentum Marketing's financial position is simply not enough to prove that defendant was seeking advertising contracts throughout the year with no intent to publish at least one more directory.

Furthermore, as explained above, the payments the complainants made to Momentum Marketing cannot be construed as deposits of funds to be used for a specific purpose (in this case, publication of the Monkey Book). While the complainants purchased advertising, there is no evidence that the terms of their agreements required that defendant put the money they paid aside to ensure that he could fund the printing of the directories at the end of the year. Because this case is not like the above cases where deposits were paid to the defendants to procure specific goods, we do not believe that the prosecution proved all of the elements for larceny by conversion. For this reason, the trial court erred when it did not direct a verdict for defendant.

Even viewing the evidence in the light most favorable to the prosecution, the facts of this case did not prove the elements of larceny by conversion. Accordingly, defendant's conviction of larceny by conversion of property, valued at $20,000 or more, is vacated. In light of this result, we need not reach the merits of defendant's remaining issues.

Defendant's conviction is vacated.

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney