*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RENO KENYATTE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
December 21, 2023

No. 363257
Genesee Circuit Court
LC No. 17-041948-FC

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his convictions by jury trial of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f).[1] The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to prison terms of 168 months to 40 years, each, for the CSC-I convictions, to be served consecutively, and 10 to 30 years for the CSC-II conviction, to be served concurrently with the CSC-I sentences. For the reasons set forth in this opinion, we affirm defendant's convictions but remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was convicted of sexually assaulting then-15-year-old SR during a weekend trip to a three-bedroom cabin in June 2017. SR went there with her friend, TM, and TM's mother and stepfather, Angela and Michael. Defendant's wife, Kimberly, is Angela's cousin. For one night, defendant and his wife joined the group at the cabin. The adults slept in two of the bedrooms, and TM slept in the third. SR was supposed to stay in the room with TM that night, but ended up falling asleep on a couch in the common area.

---

[1] The jury acquitted defendant of an additional count of CSC-II.

SR testified defendant woke her up during the early morning hours asking to see her breasts, which she refused. She testified that, defendant then grabbed her breasts, forced her to touch his penis, and performed oral sex on her. Defendant stopped and left when he heard a noise, but then returned and again performed oral sex on SR. When defendant left the room again, SR went into TM's bedroom and told her what happened. TM's mother and stepfather were then advised what happened and confronted defendant. SR was taken to the police station and was subsequently examined by a Sexual Assault Nurse Examiner at a hospital. A sample collected from SR's breast area contained DNA matching defendant's DNA profile. Defendant gave a statement to the police in which he initially denied any inappropriate activity with SR. Defendant later admitted he placed his mouth on SR's breasts, but denied engaging in oral sex.

The prosecutor originally charged defendant with CSC-I and CSC-II under alternative theories that he engaged in sexual penetration and sexual contact (1) with a victim between the ages of 13 and 16, while in a position of authority over the victim, or (2) under circumstances involving the commission of another felony, the felony being unlawful imprisonment. MCL 750.520b(1)(b)(*iii*) or (c); MCL 750.520c(1)(b)(*iii*) or (c). On the day before trial, the trial court allowed the prosecutor to amend the information to instead proceed solely under the theory that defendant committed the CSC-I and CSC-II by using force or coercion to accomplish the sexual penetration and contact, causing personal injury to SR in the form of mental anguish. MCL 750.520b(1)(f); MCL 750.520c(1)(f).

The jury found defendant guilty of the two charged CSC-I counts and the CSC-II count alleging he touched SR's breasts, but acquitted defendant of the CSC-II count alleging he forced SR to touch his penis. Defendant now appeals.

## II. ANALYSIS

Defendant asserts that several errors occurred in the trial court proceedings. He contends that: (1) his due-process rights were violated by the late amendment of the information; (2) his due-process rights were violated when the trial court permitted the hearsay testimony of the nurse about what the victim said; (3) the prosecutor violated his due-process rights by evoking sympathy for the victim for having to relive the events because of defendant's exercise of his right to a jury trial, and by vouching for the victim's veracity; (4) the trial court improperly assessed Offense Variable (OV) 13, and the proper assessment changed the guidelines range for his sentence, mandating resentencing; (5) the trial court failed to justify its imposition of consecutive sentences for the CSC-I counts; and (6) the trial court violated defendant's right to a speedy trial. Throughout many of these arguments, defendant also argues his trial counsel was ineffective for failing to object or otherwise act in his best interest. While we disagree defendant's rights were violated by the late amendment of the information, the prosecutor's remarks to the jury, or the delay in bringing defendant to trial, and disagree with defendant's argument about the admissibility of the nurse's testimony, we agree the trial court improperly assessed OV 13 and failed to justify its imposition of consecutive sentences for the CSC-I counts.

## A. AMENDMENT OF THE INFORMATION

Defendant first argues that the trial court erred by allowing the prosecutor to amend the information the day before trial. We disagree.[2]

The information originally charged defendant with CSC-I and CSC-II under alternative theories that he engaged in sexual penetration and sexual contact (1) with a victim between the ages of 13 and 16, while in a position of authority over the victim, or (2) under circumstances involving the commission of another felony, the felony being unlawful imprisonment, contrary to MCL 750.520b(1)(b)(*iii*) or (c); MCL 750.520c(1)(b)(*iii*) or (c). The day before trial, the trial court permitted the prosecutor to amend the information, replacing these theories with the single theory that defendant engaged in sexual penetration and sexual contact by using force or coercion and caused personal injury, contrary to MCL 750.520b(1)(f) and MCL 750.520c(1)(f).

Under MCR 6.112(H): "The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant. On motion, the court must strike unnecessary allegations from the information." An information may be amended at any time before, during, or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and proofs, so long as the defendant was not prejudiced by the amendment and the amendment does not charge a new crime. *People v Goecke*, 457 Mich 442, 459-460; 579 NW2d 868 (1998); *People v Higuera*, 244 Mich App 429, 446; 625 NW2d 444 (2001). See also MCL 767.76.

The prosecutor provided defendant with notice of his intent to amend the information before trial commenced and defendant was afforded the opportunity to address the amendment before trial. The amendment did not charge any new crimes, it only altered the theory on which the prosecutor intended to rely to establish the aggravating factors necessary to prove the offenses of CSC-I and CSC-II. Further, one of the original charged theories was that defendant used a position of authority to "coerce the victim to submit," MCL 750.520(1)(b)(*iii*); MCL 750.520c(1)(b)(*iii*), and the proposed amendment likewise required the prosecutor to prove that "force or coercion" was used to accomplish the sexual penetration and sexual contact. MCL 750.520(1)(f); MCL 750.520c(1)(f). Whether the sexual acts were accomplished by force or coercion was also a focus of the evidence throughout the case and was explored at the preliminary examination. Thus, defendant cannot claim unfair surprise with respect to the "force or coercion" element of the amended theory.

However, the amendment also introduced a theory that defendant was guilty of CSC-I and CSC-II because he caused personal injury to the victim. "Personal injury" is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). The prosecutor's theory at trial was that

---

[2] "This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information." *People v Spencer*, 320 Mich App 692, 697; 909 NW2d 17 (2017). A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. *Id.*

defendant caused personal injury to SR in the form of mental anguish. At the hearing on the prosecutor's motion to amend, in the context of exploring the personal injury issue, the trial court inquired whether the prosecutor intended to offer any evidence that had not already been disclosed, noting it did not intend to allow any such evidence. The prosecutor clarified he did not intend to offer any new evidence.

Defendant argues that this case is similar to *People v Willett*, 110 Mich App 337, 342-344; 313 NW2d 117 (1981), which also involved a CSC-I case in which the trial court allowed the prosecutor to amend the information in a manner similar to the amendment in this case. First, we note that we are not bound by *Willett*, because it was decided before November 1, 1990. MCR 7.215(J)(1). Regardless, *Willett* is distinguishable from this case. In *Willett*, the prosecutor waited until after the close of proofs to change its theory of the case from one involving criminal sexual conduct during the commission of another felony to one involving the use of force or coercion and causing personal injury. In *Willett*, the personal injury element was largely ignored by both parties during trial. This Court determined the amendment "after the close of proofs served to prejudice the defendant by denying him the opportunity to present evidence to disprove the element of personal injury to the victim." *Id.* at 344. Unlike the defendant in *Willett*, in this case, defendant had notice of the amendment before trial, and thus had an opportunity to defend against the amended theory. Although defendant argues the late notice prejudiced his ability to produce evidence to defend against the new theory concerning mental anguish, he does not identify any evidence he would have produced had he been aware of the amendment earlier.

Although it would have been preferable if the prosecutor had moved to amend the information earlier, MCR 6.112(H) permits amendment even during or after trial. The trial court properly observed that the amendment did not allege a new offense or change the possible penalty for a conviction, and clarified that the prosecutor did not intend to offer any new evidence in support of the amendment. Therefore, defendant has not shown he was unfairly surprised or prejudiced by the amendment, and so the trial court did not abuse its discretion by allowing the amendment.

## B. HEARSAY

Next, defendant argues that reversal is required because the nurse testified regarding statements made by SR when she was examined on the day of the charged offenses. Defendant argues SR's statements to the nurse were inadmissible hearsay. We disagree.[3]

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v Dendel (On Second Remand)*, 289 Mich App 445, 452; 797 NW2d 645 (2010). Hearsay is not admissible unless it falls under one of the exceptions in the Michigan Rules

---

[3] Defendant concedes this issue is unpreserved because there was no objection to this evidence at trial. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001); MRE 103(a)(1). We review an unpreserved claim of evidentiary error for plain error (i.e., an error that is clear or obvious) that affects a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

of Evidence. MRE 802. In admitting the statement, the trial court relied on MRE 803(4), which provides that the following statements are not excluded by the hearsay rule, even when the declarant is available as a witness:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court held that the statements made by the victim to a nurse performing a sexual assault examination were generally admissible under MRE 803(4), explaining:

> Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. This is true irrespective of whether the declarant sustained any immediately apparent physical injury. *People v Garland*, 286 Mich App 1, 8-10; 777 NW2d 732 (2009). Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. *Id.* at 9-10; *People v McElhaney*, 215 Mich App 269, 282-283; 545 NW2d 18 (1996). Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4).

To the degree the prosecution cites *Mahone* for the claim that any and all statements by a victim of sexual assault victim to a nurse during a sexual assault examination are *automatically* admissible, we disagree. The question requires consideration of the nature of the statement and the context in which it was made. In *Mahone*, the actual statements to the nurse are not described, so it is unclear what "statements made to the nurse" were at issue.[4]

We therefore apply the test set forth by the Supreme Court in *People v Meeboer*, 439 Mich 310, 322; 484 NW2d 621 (1992), which explained:

> In order to be admitted under MRE 803(4), a statement must be made for purposes of medical treatment or diagnosis in connection with treatment, and must describe medical history, past or present symptoms, pain or sensations, or the inception or

---

[4] Similarly, in *Garland*, upon which *Mahone* relied, the content of the statements to the nurse are not described. And, in *People v McElhaney*, the other case relied on by *Mahone*, the Court did not hold that all such statements necessarily fall within MRE 803(4). Rather, it recognized that the issue was to be decided on a case-by-case basis and applied the test defined in *Meeboer* to determine whether the statements fell within the exception.

general character of the cause or external source of the injury. Traditionally, further supporting rationale for MRE 803(4) are the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient. The trustworthiness of a child's statement can be sufficiently established to support the application of the medical treatment exception. Furthermore, we find that the identification of the assailant is necessary to adequate medical diagnosis and treatment.

The victim in this case was 15 years old, and thus "there was a rebuttable presumption that she understood the need to tell the truth to the nurse." *Garland*, 286 Mich App at 9.

We also disagree with defendant's argument that SR's statements to the nurse were not admissible under MRE 803(4) because the information SR provided was not reasonably necessary for medical diagnosis or treatment. The nurse was examining SR with regard to an alleged sexual assault, and, as explained in the cases just cited, a sexual assault can involve many different types of harm. Further, the nurse explained that the information was important to direct her examination and know what to look for and focus on. In addition, knowing the circumstances and nature of the assault, including the identity of the perpetrator, may be necessary for the medical provider to assure the safety of the patient. See *Meeboer*, 439 Mich at 322 ("the identification of the assailant is necessary to adequate medical diagnosis and treatment."). Lastly, the fact that the examination may have been conducted in part to collect evidence of a sexual assault is not dispositive. *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). Accordingly, because SR's statements to the nurse fall within the scope of MRE 803(4), they were not inadmissible hearsay.

We also reject defendant's related argument that defense counsel was ineffective for failing to object to this evidence. Because SR's statements to the nurse were admissible under MRE 803(4), any objection by counsel would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Johnson*, 315 Mich App 163, 195; 889 NW2d 513 (2016); *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. PROSECUTORIAL MISCONDUCT

Defendant next argues that a new trial is required because the prosecutor made improper statements during closing argument. We disagree.[5]

---

[5] Because there was no objection to the challenged remarks at trial, these claims are unpreserved. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). An unpreserved claim of prosecutorial misconduct is reviewed for plain error affecting defendant's substantial rights. *People v Abraham*, 256 Mich App 265, 275; 662 NW2d 836 (2003). This Court will reverse "only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 275-276. This Court "will not find error requiring reversal if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Williams*, 265 Mich App 68, 71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided on a case-by-case basis, and the challenged conduct must be reviewed in context. *McElhaney*, 215 Mich App at 283. The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

"A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003); see also *Bahoda*, 448 Mich at 282. Although prosecutors must refrain from making prejudicial remarks, they are permitted to use "hard language" when the evidence supports it and are not required to phrase their arguments in the blandest of terms. *Bahoda*, 448 Mich at 282; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). But, a prosecutor commits misconduct by "abandon[ing] his or her responsibility to seek justice" and by making improper remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (citations omitted).

Defendant first argues the prosecutor improperly urged the jury to sympathize with the victim. He further claims that the prosecutor disparaged his exercise of his constitutional right to a jury trial by suggesting that he forced SR to attend trial. Defendant relies on the following emphasized portion of the prosecutor's closing argument:

These are the elements for counts 1 and 2, that the Defendant engaged in a sexual act that involved the following, the touching of [SR's genital] opening with the Defendant's mouth or tongue. You heard evidence consistent with that and nothing to contradict that. That the Defendant caused personal injury to [SR] as it relates to the specific things you could think about when it comes to personal injury, was the victim—was [SR] upset, crying, or hysterical during or after the event? The witnesses who were there all say she was. *Did she need psychological treatment? She hadn't sought it until she got a subpoena for this and realized she hadn't worked through the trauma that the Defendant caused her.* Did it interfere with her ability to lead a normal life? She testified as to it affecting her relationships at school, she was angry at school. Was she afraid that someone else would be hurt or killed? You remember her testimony when the Defendant was looming and she stated she was afraid as she disclosed, she didn't know what he would do as he was there in the room and it was obvious that she was letting people know what he did to her. Did she feel angry of [sic] humiliated? She testified that she did. Did she need medication for anxiety, insomnia, or other symptoms? She testified she had to take melatonin to sleep after this. Did the emotional effects of the incident last a long time? Define long, it's been five years and she's still experiencing them and you saw that. Did she feel scared [about] the possibility of being attacked again? She did not know what he was going to do when he was in that room with her and it was obvious that she was disclosing. Ladies and gentlemen, those are some of the things you may think about when you decide whether or not [SR] suffered mental anguish but I would argue that all of those things show that she did, in fact, suffer mental anguish and that was her personal injury as a result of this assault. [Emphasis added.]

It is improper for the prosecutor to appeal to the jury to sympathize with the victim. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). It is also generally inappropriate for a prosecutor to ask jurors to place themselves in the role of the complainant when arriving at a verdict. *People v Buckey*, 133 Mich App 158, 167; 348 NW2d 53 (1984), rev'd on other grounds 424 Mich 1 (1985).

Viewed in context, the challenged comments did not involve a direct plea to the jury to sympathize or identify with the victim or even encourage the jury to suspend their judgment and decide the case based on their sympathy for the victim. *People v Hoffman*, 205 Mich App 1, 21; 518 NW2d 817 (1994). The prosecutor's remarks about the emotional trauma SR experienced and her need for psychological treatment were made in the context of addressing the personal injury element of the charged offenses. The prosecutor's remarks were directed at the evidence introduced at trial, which the prosecutor argued "show that she did, in fact, suffer mental anguish and that was her personal injury as a result of this assault."

The record also does not support defendant's claim that the prosecutor disparaged his exercise of his right to a jury trial. Defendant relies on *Burns v Gammon*, 260 F3d 892, 896 (CA 8, 2001), in which the prosecutor asked the jury to consider that the defendant, "by exercising his constitutional right to a jury trial and to confront witnesses, forced the victim to attend trial, take the stand and relive the attack." The *Burns* court held it was improper for the prosecutor to use the defendant's exercise of his fundamental constitutional guarantees against him. *Id.* In this case, the prosecutor did not comment on defendant's exercise of his constitutional right to a jury trial and to confront witnesses. The prosecutor's reference to the subpoena was made only in the context of explaining, consistent with the factual evidence, why SR began to relive the trauma caused by the assault, which was relevant to the personal injury element of the charged offenses. The prosecutor did not accuse defendant of causing trauma to SR by exercising his right to a jury trial. Accordingly, defendant has not demonstrated that the prosecutor's arguments were improper.

Defendant similarly argues that the prosecutor improperly vouched for SR's credibility in the following emphasized portion of the prosecutor's closing argument:

> *Ladies and gentlemen, I'll argue that you have all the reasons to believe [SR]. She was under oath here. She understood her oath and was incentivized to tell the truth. She said she would, that's what she agreed to. Very importantly, she had no incentive to lie.* She didn't know the Defendant. She didn't have anything to gain by upsetting this family vacation, not even her family, her friend's family, at 3:00 in the morning with these very specific allegations of oral sex being forced on her, not once but twice, and that the Defendant had kissed or sucked her breasts. Why those specific allegations if she had made this up? Her testimony is corroborated by the medical evidence, the contemporaneous [sic], within hours of her assault, she tells the nurse exactly what the Defendant did to her. . . . [Emphasis added.]

Defendant also challenges the following emphasized portions of the prosecutor's rebuttal argument:

*Ladies and gentlemen, [SR] not only had no incentive to make this up, not only did she have no incentive to lie, she had every incentive to tell the truth to keep herself safe.* Swabbing the hands, arguing that the nurse—that's not in evidence, the nurse did not say, of course, I would have swabbed that hand, it's not there, and that's what the defense has to rely on, that's all they can do, that's all they do when there's DNA on a 15 year old child's breasts, the Defendant's DNA. . . . Ladies and gentlemen, all of the testimony points to the Defendant having done what [SR] said he did, the DNA, his own statement, you'll note that at the end he doesn't want to continue the statement so Detective Sergeant Scott says, okay, we're done, immediately, it was a voluntary statement, he told you what he did. *Ladies and gentlemen, [SR] had no incentive to lie. She had every incentive to tell the truth.* Consider what's in evidence. There's no reason to reach or run down rabbit holes because what's in evidence proves each element as he is charged beyond a reasonable doubt and it's not reasonable to think otherwise. Hold the Defendant responsible for what he did to that 15 year old [sic] child, find him guilty as charged. [Emphasis added.]

It is improper for prosecutors to express their personal knowledge or belief regarding the credibility of a witness or to vouch for a witness's credibility by suggesting that he or she has some special knowledge about the witness's truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). But that did not occur in this case. It was not improper for the prosecutor to argue why he believed the evidence at trial demonstrated SR was credible. Indeed, the jury was tasked with determining the credibility of the witnesses and the trial court instructed it that, in determining whether to believe a witness, it may consider, among other factors, whether, "[i]n general, does the witness have any special reason to tell the truth, or any special reason to lie?" Thus, it was not misconduct for the prosecutor to argue his position that there were reasons, grounded in the evidence, for why SR had the incentive to tell the truth and that there was no evidence of any incentive to lie.

Finally, because the prosecutor's remarks were not improper, defendant's related claim that defense counsel was ineffective for not objecting to the remarks cannot succeed. Counsel was not required to make a futile objection. *Ericksen*, 288 Mich App at 201.

### D. OFFENSE VARIABLE 13

Defendant argues the trial court erred when it assessed 25 points for OV 13. We agree, but conclude that defendant should have been scored five points for OV 12.[6]

---

[6] In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), the Supreme Court explained:

> *Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute,*

At sentencing, the prosecutor argued OV 13 should be assessed at 25 points because the offense involved a pattern of three or more crimes against a person. MCL 777.43(1)(c). The prosecutor agreed the trial court could not count one of the CSC-I convictions to assess OV 13 because it was used to assess OV 11, but argued that it could count defendant's other two convictions in this case, for the other CSC-I and the CSC-II, and asserted the evidence at trial demonstrated defendant committed another uncharged crime against a person, either assault with intent to commit criminal sexual penetration, MCL 750.520g(1), or assault with intent to commit CSC-II, MCL 750.520g(2). The trial court agreed with the prosecutor's argument, although it did not identify which uncharged crime it believed defendant committed.

We agree that for purposes of scoring the guidelines, the "sentencing offense" is the first of the two counts of CSC-I, while the second CSC-I conviction and the CSC-II conviction are not. The second CSC-I conviction was utilized to assess OV 11 and therefore cannot be used to assess OV 12 or OV 13. OV 12 addresses "contemporaneous felonious criminal acts," MCL 777.42, and while the sentencing offense may not be assessed, the CSC-II conviction must be, as it occurred within 24 hours of the sentencing offense. Accordingly, defendant should have been assessed 5 points for the CSC-II conviction. A felony assessed for OV 11 or OV 12 may not be counted for purposes of OV 13. MCL 777.42(2)(c). Therefore, the only conviction for which defendant may be assessed in OV 13 is the CSC-I that constitutes the sentencing offense.

The prosecutor maintains that defendant could nevertheless be assessed under OV 13 because, in addition to the offenses for which he was tried and convicted, he also committed both assault with intent to commit CSC-I and assault with intent to commit CSC-II, which should be counted for purposes of OV 13. We disagree.

The elements of assault with intent to commit criminal sexual penetration "are simply (1) an assault, and (2) an intent to commit CSC involving sexual penetration." *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004). The elements of assault with intent to commit criminal sexual contact are "an assault, involving the use of force or coercion, with the specific intent to touch the victim's genital area, groin, inner thigh, buttock, breast, or clothing covering those areas, for the purpose of sexual arousal or sexual gratification." *People v Evans*, 173 Mich App 631, 634; 434 NW2d 452 (1988).

In *Nickens*, 470 Mich at 629, the Supreme Court held that assault with intent to commit CSC involving sexual penetration is a necessarily included lesser offense of CSC-I involving the use of force and coercion and causing personal injury. The Court rejected the notion that CSC-I and assault with intent to commit criminal sexual penetration based on the same conduct are distinct offenses. *Id.* at 631. Given the analysis in *Nickens*, it logically follows that CSC-II

*i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [footnotes omitted.]*

A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

involving the use of force and coercion and causing personal injury and assault with intent to commit CSC-II cannot be considered distinct offenses when arising from the same conduct.

The record at trial does not establish any conduct not necessary to defendant's convictions of CSC-I and CSC-II that would establish a separate and distinct offense of assault with intent to commit either criminal sexual penetration or CSC-II. On appeal, the prosecutor offers the following explanation in support of his argument that the testimony at trial established defendant committed the separate crime of assault with intent to commit either criminal sexual conduct involving penetration or CSC-II:

> The testimony of the victim was that she was asleep in a common room on the couch when Defendant touched her breasts after she told him she was 15 years old and did not want him to, Defendant forcibly kissed her, forced her legs open to "put his tongue to my clit", forced her to touch his penis and "jerk him", forced her shorts down and again used his tongue to penetrate her, and then seemed to hear a noise that caused him to go back to his room where his wife was sleeping. This made her feel scared and like she was having a panic attack. Assault with intent to commit criminal sexual conduct involving penetration in the first or second degree is a felony. MCL 750.520g.

Contrary to what the prosecutor argues, defendant's touching of SR's breasts was the conduct that formed the basis for defendant's CSC-II conviction. Defendant was also charged with a second count of CSC-II for forcing SR to touch his penis, but defendant was acquitted of that count. Therefore, under *Beck*, 504 Mich at 609-610, that conduct may not be considered. The other conduct described in the prosecutor's explanation is defendant's act of forcibly kissing SR on her mouth, but such kissing is not conduct encompassed within the definition of "sexual contact," which is defined as:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner[.] [MCL 750.520a(q).]

Therefore, we disagree with the prosecutor's argument that the trial court's assessment of OV 13 may be upheld on the basis that defendant committed assault with intent to commit criminal sexual conduct.[7]

---

[7] At sentencing, the prosecutor also suggested that the uncharged offense of accosting a child for immoral purposes, MCL 750.145a, could be counted for purposes of OV 13. However, the prosecutor has not made this argument on appeal, and so it is deemed to be abandoned. See, e.g., *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993). In any event, even if that uncharged offense were to be counted along with the sentencing offense, it would not result in "3 or more crimes against a person." MCL 777.43.

In sum, we conclude that OV 13 should have been scored at zero and that OV 12 should have been scored at 5 points. This results in a 20 point reduction in defendant's OV points from 70 to 50 which in turn places him in grid III-E rather than grid IV-E and reduces his guideline range (as a third habitual offender) from 135-337 months to 126-315 months. Because the guidelines range has changed, remand for resentencing is required. *People v Francisco*, 474 Mich 82, 90-91; 711 NW2d 44 (2006).

## E. CONSECUTIVE SENTENCING

Defendant also argues that the trial court erred by ordering that his sentences for CSC-I be served consecutively. Because we are vacating and remanding for resentencing, we are not required to address this issue and do not. However, we note, cogent arguments were made both in opposition to and in support of consecutive sentencing. We note, on remand, if consecutive sentences are imposed, the trial court should make specific findings as to why consecutive sentences should be imposed, as well as why the sentences selected are individually proportionate, and not general observations. See *People v Norfleet*, 317 Mich App 649, 665-666; 897 NW2d 195 (2016).

## F. SPEEDY TRIAL

Lastly, in a pro se brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues the excessive delay between his arrest in 2017 and his trial in 2022 violated his constitutional right to a speedy trial, and defense counsel was ineffective for failing to raise this issue in a motion to dismiss. We disagree.[8]

A defendant's right to a speedy trial is guaranteed by both the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20. See also MCL 768.1; MCR 6.004(A). The right to a speedy trial requires that the trial commence within a reasonable time under all of the circumstances, which can vary widely from case to case. *People v Spalding*, 17 Mich App 73, 75-76; 169 NW2d 163 (1969). "The time for judging whether the right to a speedy trial has been

---

[8] "A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Although defendant orally asserted his right to a speedy trial at a hearing on November 18, 2019, the prosecutor challenged that request because it was not made in writing, and the trial court declined to consider the request and advised defendant he could file an appropriate motion. Because defendant never subsequently asserted his right to a speedy trial in an appropriate motion, he did not properly preserve this issue. *People v Duncan*, 373 Mich 650, 656; 130 NW2d 385 (1964). Indeed, defendant concedes on appeal that this issue was not properly preserved in the trial court.

Because this issue is unpreserved, it is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious, and an error affects substantial rights if it affects the outcome of the proceedings. *Id.* at 763. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant, or the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 763-764.

violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). A defendant's right to a speedy trial is not violated after a fixed number of days. *Id.* Rather, a court is required to balance the following factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 261-262. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. When the delay amounts to less than 18 months, the defendant must prove that he has suffered prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

The first factor considers the length of the delay, which, in this case, was significant. The total delay was just a few months short of five years after defendant's arrest. Because the length of the delay was well beyond 18 months, prejudice is presumed and the burden is on the prosecutor to prove that defendant was not prejudiced by the delay. *Williams*, 475 Mich at 262.

Turning to the second factor, reasons for the delay, docket congestion was responsible for some of the delay before March 2020. "Although delays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997). Some of the delay was also attributable to difficulties obtaining records of other bad acts evidence regarding defendant's prior sexual assault, which the prosecutor intended to use to support a motion to introduce evidence of defendant's prior sexual assault at the trial in this case. However, defendant was not prejudiced by this delay because the trial court ultimately denied the prosecutor's motion to introduce this evidence at trial. The trial court confirmed in February 2020 that the parties were ready for trial and intended to schedule a trial date shortly thereafter, but, unfortunately, the COVID-19 pandemic erupted in March 2020, and the delay thereafter was attributable to court shutdowns, the suspension of jury trials, and a pandemic-driven trial backlog.

In March 2020, the Governor declared a state of emergency because of the onset of the COVID-19 pandemic, and the Supreme Court, in response, issued Administrative Order No. 2020-1, effective immediately, and adopted emergency procedures in the state's court facilities. See 505 Mich xcix. Effective March 18, 2020, the Supreme Court imposed limits on trial court proceedings, limiting access to courtrooms to no more than 10 persons. Administrative Order No. 2020-2, 505 Mich cii. Additionally, beginning April 23, 2020, the Supreme Court delayed all jury trials until June 22, 2020, or until further order of the Court. See Administrative Order No. 2020-10, 505 Mich cxxxix.

In *United States v Smith*, 494 F Supp 3d 772, 783 (ED CA, 2020),[9] the federal district court considered how delay attributable to the COVID-19 pandemic should be considered when

---

[9] We recognize that cases from sister states or lower federal courts are not binding. *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013); *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010). However, because this issue has not yet been resolved in our courts, we turn to other courts for guidance.

evaluating a speedy-trial claim, and explained that such delay should not be attributed to either the defendant or the government, stating:

> The Court finds the delay to be neither attributable to the Government nor Smith. Instead, the Court's decision to take responsible, emergency health measures to limit the spread of COVID-19 is responsible for the delay. The Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay. One that does not weigh against the Government.

While this Court has not yet addressed in a published decision how delays related to the COVID-19 pandemic should be considered when evaluating a speedy-trial claim, it has held that delays caused by the pandemic should not be held against the government in the related context of evaluating whether dismissal is required under the statutory 180-day rule, MCL 780.131. See *People v Witkoski*, 341 Mich App 54, 57-58, 62-64; 988 NW2d 790 (2022). The COVID-19 pandemic not only prevented defendant's trial from proceeding in early 2020, but the resulting court shutdowns and suspensions of jury trials created a backlog of cases for the courts. Unlike many defendants, defendant was out on bond for most of the time he awaited trial, and when jury trials resumed, priority was given to trying the pending cases of incarcerated defendants. We agree with *Smith* that the delay caused by the pandemic is not attributable to the prosecutor.

Under the third factor, we recognize that while defendant did orally assert his right to a speedy trial at a hearing in November 2019, he did not thereafter formally assert this right in an appropriate motion as directed by the trial court.

Finally, under the fourth factor, the record does not establish that defendant was prejudiced by the delay. There are two types of prejudice: prejudice to the person and prejudice to the defense. *Williams*, 475 Mich at 264. Prejudice to the "person would take the form of oppressive pretrial incarceration leading to anxiety and concern." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). However, "[e]very incarceration results in a degree of prejudice to the person." *Id.* Prejudice to the defense is the more serious concern when assessing the harm caused by a delay, and a defendant might be able to withstand a longer delay if the impact is personal only. *Williams*, 475 Mich at 264. Prejudice to the defense might take the form of key witnesses no longer being available. *Collins*, 388 Mich at 694.

With regard to prejudice to his person, defendant seems to rely solely on the length of time he awaited trial, which he asserts led to anxiety and concern about his future. A defendant's anxiety while awaiting trial is an appropriate factor to consider, but is insufficient, standing alone, to establish a violation of the right to a speedy trial. *Gilmore*, 222 Mich App at 462. Although the pending charges understandably may have caused defendant to experience some stress and anxiety while awaiting trial, see *Barker v Wingo*, 407 US 514, 532-533; 92 S Ct 2182; 33 L Ed 2d 101 (1972), defendant was out on bond for all but approximately 30 days while he awaited trial, so the personal prejudice was minimized. The more significant form of prejudice is when a delay impacts a defendant's ability to defend against charges. In this case, however, defendant has not identified any witnesses or evidence that were lost or otherwise demonstrated that the delay impacted his defense. Accordingly, defendant has not demonstrated that he was prejudiced by the delay.

In sum, although the delay in bringing defendant to trial was substantial, the record shows that much of the delay before March 2020 was attributable to docket congestion, which is given only minimal weight, and to difficulties obtaining records for an issue that ultimately was decided in defendant's favor. The delay after March 2020 was attributable to the COVID-19 pandemic, which should not be held against the prosecutor. Although defendant did orally assert his right to a speedy trial at a hearing in November 2019, he never raised the issue in an appropriate motion as directed by the trial court. Further, because defendant was out on bond during nearly all of the period of delay, any prejudice to his person was minimal, and there is no indication that the delay prejudiced defendant's ability to defend against the charges. Balancing all of the relevant factors, defendant has not established a violation of his right to a speedy trial.

Because we conclude defendant's right to a speedy trial was not violated, defendant's related claim that defense counsel was ineffective for not raising the issue in a motion to dismiss also cannot succeed. *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022).

## III. CONCLUSION

We affirm defendant's convictions. However, because correction of the guidelines scoring changes defendant's guidelines range, we remand for resentencing. Additionally, to the extent the trial court wishes to impose consecutive sentences for the CSC-I counts, it must provide particularized reasons for so doing on the record. We retain jurisdiction.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

# Court of Appeals, State of Michigan

# ORDER

People of MI v Reno Kenyatte Johnson

Docket No.    363257

LC No.        17-041948-FC

James Robert Redford
Presiding Judge

Douglas B. Shapiro

Christopher P. Yates
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, remand shall be limited to resentencing.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 21, 2023
Date

_____
Chief Clerk